cannot be admitted against the separate estate, in competition with the separate creditors.

═══════

MARX (CLARK v.). See Case No. 2.830.

═══════

## Case No. 9,182.

### The MARY.

[Blatchf. Pr. Cas. 618.] [1]

District Court, S. D. New York. Jan. 17, 1865.

PRIZE—BLOCKADE—COMING OUT OF BLOCKADED PORT—NO PAPERS—ADMISSIONS OF MASTER.

Vessel and cargo condemned for an attempt to violate the blockade.

In admiralty.

BETTS, District Judge. The above-named vessel, laden with a cargo consisting of cotton, tobacco, and spirits of turpentine, was captured, as prize of war, by the ship-of-war Mackinaw, Commander Beaumont, of the United States navy, on the 3d day of December, 1864, on the Atlantic Ocean, in latitude 32° 11' north, longitude 78° 14' west, and was sent into this port for adjudication. On the 22d day of December thereafter, the said prize vessel and cargo were seized and attached by the marshal, upon due process of law, and on the 10th of January, 1865, such attachment was by him returned in open court, and filed therein, upon which arrest and attachment due proclamation was made in court, and defaults were ordered and declared by the court, upon the motion of the United States attorney. The pleadings and proofs in the case, after such default was taken, and judgment thereupon was rendered by the court, were submitted to the consideration of the court by the United States attorney, and judgment final was moved thereon, for condemnation and forfeiture of the said vessel and cargo.

No paper documents proving the ownership of the vessel were discovered on board the prize. Her master testifies on his examination in preparatorio, that he believes she belonged to a man residing in Nassau, N. P., named Ferguson; that she sailed under English colors, and had no other on board; that she was captured for attempting to run the blockade imposed and maintained by the United States government against ports of the enemy; that he was appointed to her command in Charleston by an agent of the owner, and took possession of her at Dewey's outlet, fifteen miles from Charleston; that he shipped all the crew but the mate and one man, at Charleston, November 22, 1864; that he believes the vessel was built in Nassau; that the voyage on which she was captured began at Charleston, and was to have ended in Nassau;

that her last clearing port previous to her capture was Charleston; that he has no bills of lading or other papers in his possession in relation to the vessel or cargo, and saw none signed, and does not know how many were signed; that the vessel was captured December 3, 1864, off the coast of Charleston, in the Gulf Stream; that he .knew of the war, and of the blockade of Charleston, when he sailed; that he was directed to throw overboard papers, if his vessel became exposed to capture; that he threw overboard papers in envelopes, the contents of which he did not know, on the appearance of a vessel previously to the appearance of the one making the capture; that he supposed his vessel ran the blockade of Charleston in going into that port; and that she sailed from Dewey's Inlet for Charleston, December 1st, and, on being sighted and approached by the Mackinaw, surrendered herself immediately to that vessel.

Francis Hertz, the only witness on board of the prize vessel at the time of her capture, who was examined in preparatorio, gives substantially the same testimony as to the facts and circumstances of the voyage and the seizure of the prize.

The result of the proofs is clear and satisfactory that the vessel and cargo were designedly employed, when arrested, in violation of the lawful blockade of the port of Charleston, South Carolina.

A decree of condemnation and forfeiture is accordingly pronounced against the vessel and cargo.